UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian and Elizabeth Wagoner,

    Plaintiffs,

v.

Black & Decker (U.S.) Inc.,

    Defendant.

Civ. No. 05-1537 (JNE/SRN)
ORDER

Daniel Sacco, Esq., Flynn Gaskins & Bennett, LLP, appeared for Plaintiffs Brian and Elizabeth Wagoner.

Russell Ponessa, Esq., Hinshaw & Culbertson, appeared for Defendant Black & Decker (U.S.) Inc.

    After a toaster oven manufactured by Black & Decker (U.S.) Inc. allegedly started a fire in their house, Brian and Elizabeth Wagoner brought this action in state court against Black & Decker for negligence and strict liability. Black & Decker removed the case to this Court. The case is before the Court on Black & Decker's Motion for Spoliation of Evidence Sanctions and the Wagoners' motion to supplement the record. For the reasons set forth below, the Court grants the Wagoners' motion to supplement. The Court also grants in part and denies in part Black & Decker's motion for sanctions.

### I.    BACKGROUND

    At approximately 5:30 a.m. on February 3, 2002, Mrs. Wagoner awoke to the sound of a smoke detector. She discovered a fire in her kitchen. Responding to her 911 call, firefighters arrived at the Wagoners' house at approximately 5:45 a.m. Shortly after entering the house, the firefighters extinguished the fire. They removed several items from the kitchen to the outside, including remnants of burnt cabinets, a toaster oven, a can opener, and plastic containers. The

1

firefighters also made a hole in the kitchen ceiling. Insulation, ash, debris, and water covered the kitchen floor and counters. At approximately 8:53 a.m., the firefighters left the Wagoners' house.

After the firefighters left, an electrician came to the Wagoners' house to restore electric service. While working in the attic above the kitchen, the electrician encountered a lot of smoke. Thinking a fire was smoldering in the attic, Mr. Wagoner called 911. Firefighters arrived at the Wagoners' house at approximately 11:30 a.m. They tore down the kitchen ceiling and removed it from the house. They also removed a lot of debris from the kitchen to the outside. The firefighters left the Wagoners' house shortly before 1:00 p.m.

The firefighters' investigation identified a dishwasher's control panel as the fire's point of origin. Before the fire, the toaster oven and the can opener, both of which were connected to an electrical outlet, sat on the counter above the dishwasher. Wiring and a switch for either overhead lights or a garbage disposal were also in the vicinity of the dishwasher.

On February 4, 2002, Mr. Wagoner spoke with a fire-claim representative from the Wagoners' insurer, State Farm Insurance Company. After that conversation, the representative, Ryan Rud, retained Brian Haag of Ward & Whitemore Universal Fire Consultants to inspect the fire scene. Later that day, Rud spoke with Mr. Wagoner at the Wagoners' house. Rud instructed Mr. Wagoner and the Wagoners' contractor not to disturb the fire scene before the completion of the inspection process. Rud also took photographs of the fire scene. The next day, Rud notified the insurer of the manufacturer of the Wagoners' dishwasher, General Electric Company, of a potential claim.

On February 6, 2002, Haag inspected the fire scene. In a status report dated February 7, 2002, Haag informed Rud of the results of the inspection:

> Based on my examination, I believe the fire occurred on the top of the kitchen counter near the area of the toaster oven. The exact cause is unknown at this time, but likely involves the failure of the oven. An electrical analysis of all components should be conducted to determine the exact cause.

Haag also stated that he had photographed the interior and exterior of the Wagoners' house and retained the toaster oven, the can opener, the dishwasher, and the duplex receptacle to which the toaster oven and can opener had been connected before the fire.

After reviewing Haag's status report, Rud decided to inform Black & Decker of a potential claim against it. By letter dated February 11, 2002, Rud informed Black & Decker that the fire damage to the Wagoners' house "may have been caused by a Black & Decker toaster oven." On February 18, 2002, Black & Decker received the letter. Three days later, Black & Decker contacted Rud and scheduled an inspection of the fire scene on Tuesday, February 26, 2002.

On Friday, February 22, 2002, Rud met Mrs. Wagoner and the Wagoners' contractor at the Wagoners' house to discuss an estimate prepared by the contractor. At his deposition, Rud testified that he did not know whether he had told Mrs. Wagoner at that meeting of Black & Decker's scheduled inspection. Rud's February 22 entry in his activity log states in part: "Scene will stay intact for Black & Decker rep to inspect on Tuesday."

From Friday, February 22, to Sunday, February 24, Mr. Wagoner demolished the kitchen, possibly with the assistance of the Wagoners' contractor. On Tuesday, February 26, Black & Decker rescheduled its inspection of the fire scene to the following day, February 27. On February 27, Mr. Wagoner informed Rud that the kitchen had been demolished. Rud then told Black & Decker's fire investigator of the fire scene's demolition.

## II. DISCUSSION

**A.    The Wagoners' motion to supplement**

After the motion hearing, the Wagoners moved to supplement the record with disclosures Black & Decker made pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. Black & Decker responded by submitting disclosures that the Wagoners omitted from their proposed supplement. Pursuant to the Pretrial Scheduling Order, Black & Decker made its disclosures on June 15, 2006. Because the motion hearing took place in early June, the Wagoners could not have included Black & Decker's Rule 26(a)(2) disclosures with their original motion papers. The disclosures are relevant to the merits of Black & Decker's motion for sanctions. Under these circumstances, the Court grants the Wagoners' motion to supplement. *See Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1020 (D. Minn. 2000). The Court will also consider the disclosures attached to Black & Decker's response to the Wagoners' motion to supplement.

**B.    Black & Decker's motion for sanctions**

Black & Decker moves to sanction the Wagoners pursuant to the Court's inherent authority. *See, e.g.*, *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (noting "court's inherent power to sanction"); *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998) ("A district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power."). Black & Decker seeks to preclude the Wagoners from introducing evidence, including expert testimony, concerning the origin and cause of the fire. The parties' primary dispute is whether the Court has the ability to sanction the Wagoners without first finding that the Wagoners demolished the kitchen in bad faith.

4

Some sanctions for spoliation of evidence may not be imposed without a finding of bad faith. For example, "there must be a finding of intentional destruction indicating a desire to suppress the truth" before a district court may sanction a party for prelitigation destruction of evidence by giving an adverse inference instruction. *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004); *Stevenson*, 354 F.3d at 746-47. The same finding must be made before a district court may dismiss a plaintiff's case due to the plaintiff's prelitigation destruction of evidence. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006). Even where bad faith is shown, the party moving for sanctions must demonstrate prejudice from the spoliation. *Id.* at 1006-07.

Other sanctions may be imposed without a finding of bad faith. *Stevenson*, 354 F.3d at 745 ("[A] finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions."); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993); *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993). For example, where a party destroys evidence that he knew or should have known was relevant to imminent litigation, a court may prevent the party from introducing certain evidence if the destruction prejudiced the opposing party. *Bass*, 150 F.3d at 850-51; *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 280-81 (8th Cir. 1995); *Dillon*, 986 F.2d at 267-69. The court need not find that the destruction took place in bad faith to impose this sanction. *Stevenson*, 354 F.3d at 747 n.2; *Dillon*, 986 F.2d at 267-69 & n.3.

Having reviewed the Eighth Circuit opinions discussed by the parties, the Court turns to what, if any, sanction to impose on the Wagoners. To begin, the Court ascertains whether the Wagoners had a duty to preserve the fire scene for Black & Decker. A duty to preserve evidence exists when a party knows or should know that the evidence is relevant to imminent litigation.

5

*Dillon*, 986 F.2d at 268; *see Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."); *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (stating that obligation to preserve evidence arises when party "should have known that the evidence may be relevant to future litigation").

In this case, a fire investigator retained by the Wagoners' insurer identified a toaster oven manufactured by Black & Decker as the fire's potential cause within a few days of the fire. Shortly thereafter, the Wagoners' insurer notified Black & Decker of a potential claim. Black & Decker responded by scheduling an inspection of the fire scene. On February 22, 2002, a few days before Black & Decker's scheduled inspection, Rud visited the Wagoners' house. His activity log from that day indicates that the fire scene will remain intact for Black & Decker's inspection: "Scene will stay intact for Black & Decker rep to inspect on Tuesday." Having been told by Rud not to disturb the fire scene until the completion of the inspection process, the Wagoners knew that they were not to demolish the fire scene until after Black & Decker's examination of the fire scene. Because the Wagoners knew or should have known of the fire scene's relevance to imminent litigation before its demolition, the Court concludes that the Wagoners had a duty to preserve the fire scene for Black & Decker. It is undisputed that the Wagoners demolished the fire scene before Black & Decker's scheduled inspection. Accordingly, the Court turns to whether the fire scene's destruction prejudiced Black & Decker. *See Stevenson*, 354 F.3d at 758 ("There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence."); *Bass*, 150 F.3d at 850-51; *Sylla-Sawdon*, 47 F.3d at 280-81; *Dillon*, 986 F.2d at 267-69.

Experts in this case agree in general terms that the fire scene is an important source of evidence in determining the fire's origin. At his deposition, Haag testified: "The fire scene and the damage to the structure is important to determine the area of origin, and I think that people should have an opportunity to see it, but it's also photographically documented through my pictures." The following exchange at Haag's deposition reveals disadvantages borne by a fire investigator who has not personally inspected a fire scene:

> Q: In your experience, are you in a better position, your opinion as a fire investigator, are you in a better position to determine the origin of the fire if you've investigated the fire scene or personally inspected the fire scene or if you've not personally inspected the fire scene?
>
> A: Yes, if you see the scene you would be better.
>
> Q: In a better position?
>
> A: Yes.
>
> Q: A fire investigator that has not been given an opportunity to inspect the fire scene is at a disadvantage, would you agree with me there?
>
> A: I think he doesn't have the same opportunities, yes.
>
> Q: The same opportunities to see and examine the evidence firsthand, correct?
>
> A: Yes.

Similarly, Donald Hoffman, an expert retained by Black & Decker, described a fire scene's importance in his affidavit:

> In the fire investigative field, NFPA (National Fire Protection Association) 921 *Guide for Fire and Explosion Investigations* is recognized as a reliable reference to be used by fire investigators for conducting fire expections. Section 14.3 of NFPA 921 establishes that the best evidence to determine the origin and cause of a fire is the fire scene itself and specifically notes the importance of preserving the fire scene "as intact and undisturbed as possible."

The record supports the obvious conclusion that the Wagoners' demolition of the kitchen prejudiced Black & Decker.

7

The Wagoners contend that the prejudice experienced by Black & Decker is "limited," "minimal," or "slight." They note that the firefighters substantially changed the fire scene before the Wagoners' experts had an opportunity to investigate it. During their two visits to the Wagoners' house on February 3, 2002, the firefighters removed several items from the kitchen to the outside. They tore down the kitchen ceiling and removed a lot of debris from the kitchen. Black & Decker acknowledges that "[e]very fire scene is subject to some level of fire department activities before the arrival of the involved investigation experts." The prejudice to Black & Decker comes not from the firefighters' efforts to suppress the fire, but from the Wagoners' demolition of the kitchen days before its scheduled inspection.

Haag's deposition testimony reveals that the Wagoners' demolition of the kitchen deprived Black & Decker of the opportunity to inspect substantial evidence. He acknowledged that he had the opportunity to take measurements at the fire scene; to examine the wiring in the Wagoners' kitchen; to personally observe smoke and burn patterns; to examine the contents of the kitchen; to examine the debris removed by the firefighters from the kitchen to the outside; to examine circuit breakers; to take whatever photographs he desired; to take whatever samples he wanted; to determine the type and composition of combustibles at the fire scene; and to attempt to reconstruct the kitchen before the fire. Moreover, his inability to distinguish damage caused by soot from damage caused by heat in photographs reveals the inadequacies of at least some of his photographs.

Similarly, Hoffman's affidavit details the prejudice experienced by Black & Decker from the Wagoners' demolition of the kitchen. According to Hoffman, the photographs do not adequately document the fire scene and are insufficient to allow him to analyze heat, burn, and smoke patterns or to identify characteristics of combustibles in the fire. Hoffman also notes his

inability to inspect physical evidence—including the kitchen countertop, cabinets, wiring, circuit breakers, and appliances—other than the evidence preserved by Haag. In short, Hoffman avers that the fire scene's demolition prevented Black & Decker from obtaining and developing important evidence regarding the cause and origin of the fire.

Notwithstanding Hoffman's affidavit, the Wagoners contend that the disclosures by Black & Decker's experts belie Black & Decker's claim that the fire scene's demolition severely prejudiced it. In his disclosure, Hoffman offers the following opinions:

1) The fire scene was spoliated such that valuable information and data were lost.

2) The origin of the fire can only be defined in general terms as the area from the dishwasher control panel to the ceiling, and from the kitchen sink and above to the corner cabinets.

3) The loss of data from the fire scene is substantial. Known ignition sources were not recovered. Any opinion regarding fire ignition, first material ignited, fire spread, and fire cause cannot be determined within a reasonable degree of scientific and engineering certainty.

4) The cause of the fire at the Wagoner residence is undetermined.

5) The toaster oven failure as defined by others, which they opined caused this fire, is not a competent ignition source for the known nearby combustibles. Therefore the toaster oven cannot be associated with a cause for this fire.

According to the disclosure of Andrew Neuhalfen, both the toaster oven and the electrical duplex receptacle "can be eliminated as to the cause of the fire." He could not eliminate the electric can opener as the fire's cause, but he identified the dishwasher as the fire's most likely cause "[g]iven the present information available." Finally, the expert disclosure of Richard Schafebrook concludes:

> Based upon the above, my formal education, my 39 years of practical experience in the engineering field and my knowledge of the subject toaster oven design, as well as the associated testing and manufacturing of same, it is my opinion to a reasonable degree of engineering certainty that the Black & Decker

9

>    Toaster-R-Oven™ was not defective or unreasonably dangerous and did not cause the fire at the Wagoner residence.
>
>    Based on my investigation, it is my opinion that the exact cause of this fire has not been determined. The inadequate investigation by Mr. Haag, coupled with the failure of [the Wagoners' insurer] to provide Black & Decker access to the fire scene and failure to have a product expert investigate the fire scene, is in my opinion a reason for this limitation.

Schafebrook nevertheless identified the dishwasher as the most probable cause of the fire. In short, Black & Decker's experts agree that the toaster oven manufactured by Black & Decker did not cause the fire in the Wagoners' kitchen, but they are unable to identify the fire's cause.

The ability of Black & Decker's experts to exclude the toaster oven as the fire's cause does not eliminate the prejudice Black & Decker experienced given their inability to identify the cause of the fire. The Wagoners, the only parties whose expert personally investigated the fire scene, will attempt to demonstrate at trial that that toaster oven caused the fire. That Black & Decker's experts could not personally investigate the fire scene is clearly prejudicial. *See Hoffman v. Ford Motor Co.*, 587 N.W.2d 66, 71 (Minn. Ct. App. 1998) ("The trial court assessed the vulnerability of respondent's experts' testimony when presented to a jury and found that respondent would be confronted with the challenge of meeting probative and convincing firsthand evidence with sketchy, relatively speculative secondhand evidence.").

The Court is not persuaded that the prejudice to Black & Decker warrants the wholesale exclusion of evidence of the fire's cause and origin. Instead, the Court will consider exclusion of evidence that derives from the fire scene itself. *See Bass*, 150 F.3d at 851; *Dillon*, 986 F.2d at 268. Although the Court is unable to comprehensively identify at this time the evidence to be excluded, the Court concludes that the exclusion of Haag, the sole expert who personally inspected the fire scene, from the Wagoners' case in chief is an appropriate sanction.

The Court recognizes that the Wagoners have attempted to "level the playing field" by retaining experts—Beth Anderson and John Pagels—who have not personally inspected the fire scene. Although an expert may rely on inadmissible facts or data in forming opinions if the facts or data are of a type reasonably relied on by experts in the relevant field, the inadmissible facts or data shall not be disclosed to the jury by the opinion's proponent unless a court determines their probative value substantially outweighs their prejudicial effect. Fed. R. Evid. 703. In determining whether the prejudice to Black & Decker warrants the exclusion of evidence other than Haag's testimony, the Court will consider the extent to which the evidence depends on Haag, his availability to Black & Decker,[1] and any inadequacies in his documentation of the fire scene. *See Dillon*, 986 F.2d at 267-68.

In sum, the Court grants Black & Decker's motion insofar as Black & Decker seeks to exclude Haag's testimony from the Wagoners' case in chief. The Court otherwise denies the motion without prejudice. The Court will consider particular requests to exclude additional evidence in motions in limine or in other appropriate proceedings.

---

[1] According to the affidavit of one of the Wagoners' attorneys in this action, "State Farm has made available to Black & Decker all evidence from and information about the fire scene that Ms. Anderson and Mr. Pagels relied on in forming their opinions." Pagels' report, dated several weeks before Haag's deposition, reveals that Pagels reached conclusions after a discussion with Haag.

11

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Wagoners' motion to supplement [Docket No. 29] is GRANTED.

2. Black & Decker's Motion for Spoliation of Evidence Sanctions [Docket No. 12] is GRANTED IN PART and DENIED IN PART.

3. The Wagoners shall not introduce the testimony of Brian Haag at trial in their case in chief.

Dated: August 8, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge